# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| ROGER BLANCHETT, | ) | |
|    Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:04cv00089 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
|  Commissioner of Social Security, | ) | By:   PAMELA MEADE SARGENT |
|    Defendant | ) | United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

## I. Background and Standard of Review

Plaintiff, Roger Blanchett, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2003). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

-1-

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Blanchett filed his applications for DIB and SSI on or about November 23, 2000, alleging disability as of March 1, 2000, based on a heart condition, breathing problems, internal bleeding and problems with passing out. (Record, ("R."), at 60-62, 68, 316-18.) Blanchett's claims were denied both initially and on reconsideration. (R. at 27-31, 32, 34-35, 324-25.) Blanchett requested a hearing before an administrative law judge, ("ALJ"), (R. at 38.) The ALJ held a hearing on September 3, 2003, at which Blanchett was represented by counsel. (R. at 328-68.)

By decision dated December 30, 2003, the ALJ denied Blanchett's claims. (R. at 16-22.) The ALJ found that Blanchett met the disability insured requirements of the Act for DIB purposes through the date of the decision. (R. at 21.) She further found that Blanchett had not engaged in substantial gainful activity since his alleged onset of disability. (R. at 21.) The ALJ found that the medical evidence established that Blanchett had severe impairments, namely hypertension, residuals of a heart valve replacement, shortness of breath, bilateral hernias and alcoholism, but she found that

Blanchett did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18, 21.) The ALJ further found that Blanchett's allegations regarding his limitations were not totally credible. (R. at 21.) The ALJ concluded that Blanchett retained the residual functional capacity to perform a limited range of sedentary work.[1] (R. at 21.) The ALJ found that Blanchett was unable to perform any of his past relevant work. (R. at 21.) Based on Blanchett's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed that Blanchett could perform, including those of a cashier, an assembler and a production inspector. (R. at 20-22.) Therefore, the ALJ found that Blanchett was not disabled as defined by the Act and was not eligible for benefits. (R. at 22.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2004).

After the ALJ issued this decision, Blanchett pursued his administrative appeals, (R. at 11), but the Appeals Council denied his request for review. (R. at 7-10.) Blanchett then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2004). The case is before this court on the Commissioner's motion for summary judgment filed March 31, 2005.

## II. Facts

Blanchett was born in 1957, (R. at 60, 332), which classifies him as a "younger

---

[1] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a) (2004).

person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Blanchett completed the eighth grade[2] and has past relevant work experience as a timber cutter and a general laborer. (R. at 69, 81, 126, 332-33.)

At his hearing, Blanchett testified that his legs swelled. (R. at 335.) He stated that he took a fluid pill to help with the swelling in his legs. (R. at 335.) Blanchett stated that he could not walk very far as a result of the swelling in his legs. (R. at 335.) He stated that he suffered from chest pain, swelling in his feet and passing out spells. (R. at 359.) Blanchett testified that he had a long history of alcohol abuse. (R. at 344.) The record shows that Blanchett was convicted and sent to prison as a habitual offender. (R. at 310-13.) He spent 18 months in prison and was released in July 2003. (R. at 339.) He testified that while he was in prison, he walked a lot and did some picture drawing. (R. at 349-50.) Blanchett testified that he attended a birthday party at his nephew's house the previous weekend where he drank one or two beers. (R. at 357.)

Vocational expert, Robert W. Jackson, testified at Blanchett's hearing. (R. at 361-66.) He was asked to assume an individual of Blanchett's age, education and work experience, who had the residual functional capacity to perform sedentary work, who had difficulty with pushing and pulling with his feet, who had a possibility of a mild reduction in concentration due to medication use, who could never climb, balance, kneel or crouch and who could occasionally stoop. (R. at 363.) Jackson stated that there would be jobs available that such an individual could perform, including jobs

---

[2]Blanchett reported on his Disability Report that he completed the ninth grade. (R. at 74.) However, he testified that he completed the eighth grade and school records confirm this. (R. at 126, 332.)

-4-

as a cashier, an assembler and a production inspector and grader. (R. at 363-65.)

In rendering his decision, the ALJ reviewed records from Smyth County Community Hospital; University of Virginia Health System Heart Center; University of Virginia Health System; Wythe County Community Hospital; Brock Hughes Free Clinic; Dr. Charles A. Harris, M.D.; Dr. Donald R. Williams, M.D., a state agency physician; Dr. F. Joseph Duckwall, M.D., a state agency physician; New River Valley Regional Jail; Wythe County Sheriff's Office;[3] and Wythe County Public Schools.[4]

The record shows that in October 2000, following echocardiograms and other testing, Blanchett was found to have severe aortic stenosis and cardiomegaly. (R. at 151-91.) Upon admission, he admitted to abusing alcohol. (R. at 202.) He underwent aortic valve replacement, and, on discharge, was instructed to avoid heavy lifting for three to six weeks and not to return to heavy manual work for six weeks. (R. at 192-95, 206-08.)

In May 2001, Blanchett was seen at Wythe County Community Hospital for complaints of abdominal pain and swelling. (R. at 282-86.) Blanchett reported that he was consuming six beers a day. (R. at 284.) Blanchett was diagnosed with incisional hernia. (R. at 285.)

---

[3] These records indicate that Blanchett was arrested in February 2001 for DUI and being a habitual offender. (R. at 136-41, 310-12.)

[4] These records also contain the records of Blanchett's son, Roger Dale "Tobey" Blanchett. (R. at 120-25.)

In June 2001, records from Brock Hughes Free Clinic indicate that Blanchett had two abdominal hernias from post operative tubes. (R. at 265.) Notes also revealed that Blanchett smelled strongly of alcohol. (R. at 266.) Blanchett was advised not to lift items weighing more than 25 pounds. (R. at 265.) In September 2003, Blanchett was diagnosed with hypertension. (R. at 315.)

In December 2001, Blanchett was seen by Dr. Charles A. Harris, M.D., for a surgical consultation for his epigastric hernias. (R. at 271-72.) Dr. Harris opined that surgery was contraindicated due to Blanchett's high blood pressure. (R. at 272.) He indicated that he would consider repairing Blanchett's hernias when his blood pressure came under better control. (R. at 272.)

Records from the New River Valley Regional Jail indicate that from February 2002 through April 2002, Blanchett had high blood pressure and needed a lower bunk due to his hernias. (R. at 295-309.) His physician opined that Blanchett should not lift items weighing more than 15 pounds, but Blanchett reported that he was feeling well. (R. at 296.) His physician advised that unless a problem occurred, surgery was not likely at that time. (R. at 296.)

On March 8, 2001, Dr. Donald R. Williams, M.D., a state agency physician, indicated that Blanchett had the residual functional capacity to perform medium[5] work. (R. at 274-81.) There were no postural, manipulative, visual, communicative or environmental restrictions placed on Blanchett's work-related abilities. (R. at 276-78.)

---

[5]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he also can do sedentary and light work. See 20 C.F.R. §§ 404.1567(c), 416.967(c) (2004).

On June 20, 2001, Dr. F. Joseph Duckwall, M.D., a state agency physician, indicated that Blanchett had the residual functional capacity to perform light[6] work. (R. at 287-94.) There were no postural, manipulative, visual, communicative or environmental restrictions placed on Blanchett's work-related abilities. (R. at 290-92.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2004); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2004). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2004).

By decision dated December 30, 2003, the ALJ denied Blanchett's claims. (R. at 16-22.) The ALJ found that the medical evidence established that Blanchett had

---

[6]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can do light work, he also can do sedentary work. See 20 C.F.R. §§ 404.1567(b), 416.967(b) (2004).

severe impairments, namely hypertension, residuals of a heart valve replacement, shortness of breath, bilateral hernias and alcoholism, but she found that Blanchett did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18, 21.) The ALJ concluded that Blanchett retained the residual functional capacity to perform a limited range of sedentary work. (R. at 21.) The ALJ found that Blanchett was unable to perform any of his past relevant work. (R. at 21.) Based on Blanchett's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed that Blanchett could perform. (R. at 20-22.) Therefore, the ALJ found that Blanchett was not disabled as defined by the Act and was not eligible for benefits. (R. at 22.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2004).

In his brief, Blanchett argues that the ALJ erred by failing to find that he suffered from a severe mental impairment. (Brief In Support Of Plaintiff's Motion For Summary Judgment,[7] ("Plaintiff's Brief"), at 12.) Blanchett also argues that the ALJ erred by failing to have a medical or psychological expert present to testify at his hearing. (Plaintiff's Brief at 13.) Blanchett further argues that the ALJ erred by failing to send him for a psychological examination. (Plaintiff's Brief at 13-14.) Blanchett does not challenge the ALJ's finding as to his physical residual functional capacity.

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its

---

[7]Blanchett has not filed a motion for summary judgment in this matter.

-8-

judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if she sufficiently explains her rationale and if the record supports her findings.

Blanchett argues that the ALJ erred by finding that he did not suffer from a severe mental impairment. I disagree. The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (200). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. See 20 C.F.R. §

Case 1:04-cv-00089-PMS   Document 22   Filed 07/08/05   Page 9 of 11   Pageid#: 69

404.1521(b), 416.921(b) (2004). The Fourth Circuit held in *Evans v. Heckler*, that, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original).

The medical evidence fails to document a severe mental impairment. The ALJ found that there was no evidence contained in the record that Blanchett's alcohol abuse had caused a psychological impairment. (R. at 19.) The record supports this finding in that none of Blanchett's physicians mention any psychiatric or mental impairment or diagnosis. The record also shows Blanchett had worked prior jobs that were heavy and unskilled without any problems or limitations in his mental functioning. (R. at 362.) Based on this, I find that substantial evidence exists in the record to support the ALJ's finding that Blanchett did not suffer from a severe mental impairment.

I find that substantial evidence exists to support the ALJ's finding that Blanchett had the residual functional capacity to perform sedentary work. Therefore, I will not address Blanchett's remaining arguments.

*IV. Conclusion*

For the foregoing reasons, the Commissioner's motion for summary judgment will be granted, and the Commissioner's decision to deny benefits will be affirmed. An appropriate order will be entered.

An appropriate order will be entered.

DATED: This 8th day of July, 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE